IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |
|---|---|
| TIM KERIN, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>   v.<br><br>TITEFLEX CORPORATION t/a GASTITE,<br><br>               Defendant. | Case No. 3:13-cv-30141<br><br>Judge Michael A. Ponsor |

**MEMORANDUM OF LAW IN SUPPORT OF TITEFLEX CORPORATION'S
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

Defendant Titeflex Corporation t/a Gastite ("Titeflex") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Alternatively, Defendant moves to strike Plaintiff's class allegations because he is not a member of the class he seeks to represent.

**I.    INTRODUCTION**

Plaintiff lacks standing to bring the claims he asserts because he suffered no legally cognizable harm. By Plaintiff's own admission, over 99.99 percent of homes in the United States with corrugated stainless steel tubing ("CSST") have not reported any issue with lightning and fire. Plaintiff himself reports no issue. Yet he claims the CSST in his home, which was allegedly manufactured by Titeflex, is defective because *if* lightning were to strike it, and *if* the tubing were to perforate as a result of the lightning strike, it *may* result in property damage or physical harm. That is not enough. To have standing, Plaintiff must have suffered an "injury-in-fact." That is, an injury that is concrete and particularized—not conjectural or hypothetical.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Plaintiff alleges no injury-in-fact. The Court should dismiss his Complaint for lack of standing.

The Court should dismiss Plaintiff's Complaint for three additional separate and independent reasons. *First*, Plaintiff's claims are barred by the economic loss rule. A plaintiff may not sue in tort for economic damages unaccompanied by personal injury or harm to property other than the product at issue. Here, Plaintiff alleges neither. *Second*, Plaintiff fails to plausibly plead any injury caused by an allegedly defective product. *Third*, Plaintiff fails to state strict liability claims in tort (Counts I and IV) because Massachusetts state law does not impose strict liability tort claims for allegedly defective products; such a claim must be brought as a breach of warranty claim—which Plaintiff has not done.

Finally, to the extent Plaintiff has stated a claim—which he has not—the Court should strike his class allegations because he is plainly not a member of the class he seeks to represent. Plaintiff alleges he is a ***Florida*** resident and has CSST installed in a house he owns in ***Florida***. He cannot represent a class of "all persons or entities ***in the Commonwealth of Massachusetts*** who purchased a house, or other structure" with CSST because he is not a member of it. Compl. ¶¶ 8, 14, 59, 63 (emphasis added).

## II.  FACTUAL ALLEGATIONS

### A.  Overview Of CSST

CSST is a thin, flexible piping used to transport natural gas within residential and commercial structures. Compl. ¶ 2. It was developed in Japan in the early 1980s as an alternative to the much thicker black iron pipe that has been used to transport gas for more than a century. *Id.* ¶¶ 2, 16. Plaintiff concedes that CSST has several advantages over iron pipe. For example, it can better withstand damage that may occur during earthquakes and other natural disasters, and it requires less labor to install. *Id.* ¶¶ 16, 26.

CSST has been used in Japan and Europe since 1980. Compl. ¶ 16. It was introduced into the United States in 1989. *Id.* The National Fire Protection Association ("NFPA") first recognized CSST in 1988 in the *Fuel Gas Code* NFPA 54. *Id.* ¶ 20. In 1989, the National Fuel Gas Code introduced coverage of CSST. *Id.* The International Association of Plumbing and Mechanical Officials approved CSST for inclusion in its 2003 Uniform Plumbing Code which allowed CSST to be used in all fifty states. *Id.* ¶ 21.

Building codes in Massachusetts, and throughout the United States, recognize CSST as a safe way to convey natural gas to furnaces, water heaters, dryers, grills, gas fireplaces, and other appliances. *See, e.g., cf.* 248 C.M.R. 4.03(1), 5.03(6). *See also cf.* Compl. ¶ 32. To mitigate any potential risk from lightning, the National Electric Code ("NEC") and National Fuel Gas Code ("NFGC") provide requirements for bonding and grounding systems like CSST.[1] Compl. ¶ 32. "Bonding is the process of making an electrical connection between the grounding electrode [such as a ground rod or cold water pipe] and any equipment, appliance, or metal conductor." *Id.* In Massachusetts, the Board of State Examiners of Plumbers and Gas Fitters (the "Plumbing Board"), the state body that regulates the installation of gas piping, has specifically approved the use of CSST, so long as a licensed electrician installs a direct bonding connection in accordance with the manufacturer's instructions. *See* Mass. Bd. of State Examiners of Plumbing and Gas Fitters, Product Policy Regarding Corrugated Stainless Steel Tubing (CSST) (Feb. 4, 2009).[2] Titeflex's instructions require direct bonding of the CSST gas piping system to the premise's electrical grounding system.

"To date, over 750 million feet of CSST have been installed in over 5 million homes across the United States." Compl. ¶ 28. "As of August 2011, 141 fires involving lightning and

---

[1] *See* NEC NFPA 70 and NFGC NFPA 54
[2] *Available at* http://www.mass.gov/ocabr/government/oca-agencies/dpl-lp/regarding-corrugated-stainless-steel-tubing-csst.html (last visited Sept. 19, 2013).

CSST have been reported" in the United States. *Id*. ¶ 39. Thus, approximately 0.00282 percent of homes with CSST in the United States (*i.e.*, 141/5,000,000) have reported a fire "involving" lightning and CSST. Whether CSST *caused* the fire in those 141 reported cases is, of course, an entirely separate question. Regardless, the fact remains that over 99.99 percent of homes in the United States with CSST have *not* reported a fire "involving" lightning and CSST.

### B.     Facts Relating To Plaintiff Tim Kerin

Tim Kerin alleges he is a Florida resident who owns a house in New Smyrna Beach, Florida. Compl. ¶¶ 8, 14, 59. The house contains CSST, which is used to service a gas fireplace. *Id.* ¶ 8.

Although Massachusetts and National Codes recognize CSST as a safe means to distribute gas through residential structures, Mr. Kerin contends it is defective because it is not completely "immune to the risk of damage that can be caused by lightning." Compl. ¶ 34. He does not allege lightning has struck his house or perforated his CSST. Nor does he allege that his CSST has caused him personal injury or property damage. He also fails to allege whether the CSST in his home is bonded and grounded in accordance with all applicable building codes.

Nonetheless, Mr. Kerin, who is a resident of, and owns a home with CSST in Florida, brings suit on behalf of himself and

> . . . [a]ll persons or entities in the Commonwealth of Massachusetts who purchased a house, or other structure, on which Titeflex's Gastite® is installed after September 5, 2006, or who, after September 5, 2006, purchased a house, or other structure, in which Titeflex's Gastite® was installed prior to September 5, 2006.

Compl. ¶ 63; *see also id.* ¶¶ 8, 14, 64. He claims the CSST in these homes poses "an unreasonable risk of fire due to lightning strikes." Compl. ¶ 7. He seeks compensatory damages in an amount equal to the cost to remove and replace the CSST in every structure in Massachusetts. *See id.* ¶¶ 62, 65j-k.

4

**III.    STANDARD OF REVIEW**

    **A.    Standard Of Review Under Rule 12(b)(1)**

A motion to dismiss for lack of Article III standing "'should be granted under Rule 12(b)(1).'" *Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 456 ("*Katz I*") (D. Mass. 2011) (Stearns, J.), *aff'd*, 672 F.3d 64 ("*Katz II*") (1st Cir. 2012) (quoting *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011)). "'When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first.'" *Id.* (quoting *Ne. Erectors Ass'n of the BTEA v. Sec'y of Labor, Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir. 1995)). The court may "look beyond the pleadings to determine jurisdiction on a 12(b)(1) motion, hence the formality of converting the motion to one for summary judgment need not be observed." *Id.* (citing *Gonzalez v. U.S.*, 284 F.3d 281, 288 (1st Cir. 2002)). The court will "accept as true all well-pleaded factual averments" in the complaint on a Rule 12(b)(1) motion. *Katz II*, 672 F.3d at 70 (quotation marks and citation omitted).

    **B.    Standard Of Review Under Rule 12(b)(6)**

In reviewing a motion to dismiss under Rule 12(b)(6), the court also must accept all well-pleaded allegations in the complaint as true "and draw all reasonable inferences in favor of the" non-moving party. *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009). While a complaint does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-57 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 30 (1st Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's

allegations are true." *Twombly*, 550 U.S. at 555. Courts should not credit bald assertions or legal conclusions alleged in the complaint. *Air Sunshine*, 663 F.3d at 30, 33. Similarly, legal conclusions draped in the guise of factual allegations have no presumption of truthfulness. *Id.*

## IV. **ARGUMENT**

### A. **The Complaint Should Be Dismissed Under Rule 12(b)(1) Because Plaintiff Lacks Standing To Bring The Claims He Asserts**

The Court should dismiss Plaintiff's Complaint because he does not have standing to maintain this action. Nowhere in his Complaint does Plaintiff allege he suffered an "injury-in-fact" sufficient to confer standing. While Plaintiff alleges an exceedingly small chance of future harm, such allegations are far too speculative to satisfy the well-established requirement that threatened injury must be "certainly impending."

Whether Plaintiff has standing to maintain this action is a fundamental question that goes to this Court's subject matter jurisdiction under Article III, section 2 of the U.S. Constitution. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). Article III standing imposes three requirements: first, the plaintiff must have suffered an "injury-in-fact" that is concrete, actual, or imminent; second, the injury must have been caused by the alleged conduct; and third, the requested relief must be able to redress the alleged injury. *Lujan*, 504 U.S. at 560-61; *Katz II*, 672 F.3d at 71. Injury-in-fact is "'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Katz II*, 672 F.3d at 71 (quoting *Lujan*, 504 U.S. at 560). Particularity requires the "plaintiff must have personally suffered some harm," and "actual or imminent injury ensures that the harm has either happened or is sufficiently threatening; it is not enough that the harm might occur at some future time." *Id.* (citing *Lujan*, 504 U.S. at 560 n.1, 564). "If a plaintiff fails to allege sufficient facts to satisfy this requirement, the case must be dismissed." *In re Fruit Juice Prods.*

*Mktg. and Sales Practices*, 831 F. Supp. 2d 507, 510 (D. Mass. 2011) (Ponsor, J.).  It is Plaintiff's burden to establish he has standing.  *Lujan*, 504 U.S. at 560-61.

Because Plaintiff fails to plead that he has suffered an "injury-in-fact," all of his claims must be dismissed for lack of standing.

### 1. Plaintiff Fails To Allege Any Actual Harm Or Even The Existence Of Any Credible Threat Of Future Harm

This Court has dismissed product defect claims where, as here, the allegedly defective product failed to cause the plaintiff any actual injury.  In *In re Fruit Juice*, consumers brought a proposed class action against various manufacturers of fruit juice and fruit products after they purchased products containing trace amounts of lead.  831 F. Supp. 2d at 509.  The manufacturers moved to dismiss the complaint because the consumers experienced no adverse health effects; instead they alleged only a risk of future harm from lead poisoning and economic injury for the decreased value of the products.  *Id.* at 510.

The Court granted the manufacturers' motion concluding the "claim of exposure to 'potential adverse health effects' or 'potential harm' is insufficient for Article III standing." *Id.*  Rather, "plaintiffs must plead a credible or substantial threat to their health."  *Id.* (quotation marks and citation omitted).  The consumers failed to satisfy their burden because, *inter alia*: (1) they did not allege anyone was injured by the products; (2) the products were not recalled; and (3) the FDA found some of the products did not "pose an unacceptable risk."  *Id.* at 511.

In *In re Fruit Juice*, this Court found the reasoning in *Koronthaly v. L'Oreal USA Inc.*, 374 F. App'x 257 (3d Cir. 2010) and *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954 (N.D. Ill. 2008), persuasive.  *Id.* at 511-21.  In *Koronthaly*, the Third Circuit affirmed the district court's dismissal for lack of standing:

> [Plaintiff] concedes that she has suffered no adverse health effects from using the lipsticks.  [Plaintiff] therefore has asserted only a

> subjective allegation that the trace amounts of lead in the lipsticks are unacceptable to her, not an injury-in-fact sufficient to confer standing.

*Id.* at 259.  And in *Frye*, the court noted the reluctance "to recognize claims for enhanced risk because the claim is inherently speculative, requiring the court to anticipate the probability of a future injury."  583 F. Supp. 2d at 958 (quotation marks and citation omitted).

Here, the same result applies.  Plaintiff does not allege the CSST in his home failed to perform or harmed him in any way, and he fails to allege any facts to support his claim that a credible threat of future harm exists.  While Plaintiff alleges that, as of August 2011, "141 fires involving lightning and CSST have been reported throughout the United States," Compl. ¶ 39, he does not allege the CSST in these homes was ***properly installed***.  In addition, he does not allege whether these 141 fires involved CSST that ***Titeflex*** manufactured; nor does he allege the CSST in these 141 homes ***caused*** the fires—just that the homes "involved" CSST and lightning.  And even assuming there ***have*** been 141 reports involving lightning and CSST, that means—by Plaintiff's own admission—***over 99 percent*** of homes with CSST have not reported any issue.

As in *In re Fruit Juice*, the Court should dismiss Plaintiff's Complaint because he fails to plausibly allege that he suffered any actual harm or that he faces a credible threat of future harm.

**2.    Plaintiff's Allegations That He Faces An Imminent Risk Of Future Harm Are Too Speculative To Confer Standing**

Not only has Plaintiff failed to allege any actual harm or the existence of a credible threat of future harm, his allegations that future harm may happen to him are too speculative to confer Article III standing.  Indeed, "'[f]uture injury must be imminent to qualify as injury-in-fact' to ensure that the 'alleged injury is not too speculative.'"  *Katz*, 806 F. Supp. 2d at 457 (quoting *Sea Shore Corp. v. Sullivan*, 158 F.3d 51, 56 (1st Cir. 1998)).

8

The U.S. Supreme Court recently made clear that allegations of future harm are insufficient to confer standing unless the threatened injury is "certainly impending." *Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138, 1143 (2013). In *Clapper*, attorneys and human rights organizations challenged the constitutionality of Section 702 of the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1881a (2006 ed., Supp. V), which allows the Attorney General and the Director of National Intelligence to acquire foreign intelligence information by jointly authorizing the surveillance of individuals outside the United States. *Id.* at 1142. Amnesty International and these attorneys, who communicate with persons outside the United States who might be targets of Government surveillance, claimed the threat of surveillance under §1881a compromised their ability to locate witnesses, cultivate sources, obtain information, and communicate confidential information to the attorneys' clients. *Id.* at 1145. They further claimed the threat would compel them to travel abroad to have in-person conversations and undertake costly and burdensome measures to protect the confidentiality of sensitive communications. *Id.*

The Second Circuit held plaintiffs had standing to sue because there was an objectively reasonable likelihood the government would intercept their communications at some time in the future. 638 F.3d 118, 133-34, 139. The Supreme Court reversed, finding that their theory of injury "relies on a highly attenuated chain of possibilities" that did not "satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 133 S. Ct. at 1148. The Court found it was speculative whether the Government would "imminently target" communications to which they were parties. *Id.* And even if plaintiffs could demonstrate "imminent targeting" of their communications, they could only "speculate as to whether the Government [would] seek to use §1881a-authorized surveillance … to do so." *Id.* at 1149-51 (describing chain of events necessary for the plaintiffs to suffer injury-in-fact).

9

Similarly in *Katz II*, the First Circuit affirmed the dismissal of plaintiff's claims for lack of standing where she alleged "that her injury is having to take or forebear from some action," but the allegation was not "premised on a reasonably impending threat." 672 F.3d at 79. Plaintiff, a brokerage account holder, "purchased identity theft insurance and credit monitoring services to guard against a possibility, remote at best, that her nonpublic personal information might someday be pilfered," as a result of defendant's allegedly inadequate protection of account information. *Id.* She did not allege her information had been pilfered, and her claim "rests entirely on the hypothesis that at some point an unauthorized, as-yet unidentified, third party might access her data and then attempt to purloin her identity." *Id.* The court rejected the argument: "Given the multiple strands of speculation and surmise from which the plaintiff's hypothesis is woven, finding standing in this case would stretch the injury requirement past its breaking point." *Id*. at 80.

Here, as in *Clapper* and *Katz II*, Plaintiff's allegations of future harm are far too speculative to confer standing. Plaintiff's injury will occur only in the following circumstances:

- *if* there is a direct lightning strike of his house, or if an indirect lightning strike occurs "close" to his house"[3];

- *if* the electrical energy created by the lightning strike "arc[s] between metal systems" in his house[4];

- *if* the arc damages the CSST's tubing wall[5];

---

[3] "In an indirect lightning strike, a strike close to a structure or house generates a partial lightning current in the metal links of the building." Compl. ¶ 30.

[4] "This electrical energy in attempting to reach ground *may* arc between metal systems that have different electrical resistance." *Id.* ¶ 30 (emphasis added).

[5] "Arcing *can* cause damage to the metal systems." *Id.* ¶ 30 (emphasis added).

10

- *if* the damage to the tubing wall is in the form of a puncture[6];
- *if* the puncture in the tubing wall results in the leaking of natural gas[7]; and
- *if* the natural gas ignites surrounding materials.[8]

These multiple layers of possibilities, all of which would have to occur for Plaintiff to sustain an injury, demonstrate his failure to plead the requisite imminence. *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 43 (3d Cir. 2011) (if a plaintiff's injury cannot be described without beginning the explanation with the word "if," then the alleged injury is too conjectural) (citation omitted).

Because Plaintiff's alleged injury is abstract, conjectural, and hypothetical, the Court should dismiss his Complaint for lack of standing.

### 3. Plaintiff May Not Rely On Others' Alleged Injuries To Confer Standing On Himself

Plaintiff's attempts to rely on the alleged injuries of *others* to confer Article III standing on *himself* should be ignored.

A plaintiff may not secure standing by piggybacking on what may have happened to some proposed class members. "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *In re WellNx Mktg. and Sales Practices Litig.*, 673 F. Supp. 2d 43, 54-55 (D. Mass. 2009) (Stearns, J.) (dismissing claim where no named plaintiff purchased

---

[6] "Damage caused by a direct or indirect lightning strike to a CSST system *can* be described as a small puncture of the tubing wall." *Id.* ¶ 31 (emphasis added).

[7] "A puncture in the tubing wall *can* ignite the natural gas at the hole." *Id.* ¶ 31 (emphasis added).

[8] "This gas *can* ignite surrounding materials to create an extensive fire…." *Id.* ¶ 31 (emphasis added).

11

allegedly defective product). If no named plaintiff can establish standing, none may seek relief on behalf of other class members. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

In *Katz II*, for example, plaintiff alleged, in part, that she was injured by defendant's failure to provide notice of a security breach. 672 F.3d at 79. She alleged "that a 'massive number of breaches of security [] have invariably occurred' and that, as a result, some level of unauthorized access must have transpired, thereby ***exposing some unspecified people's*** nonpublic personal information to further unauthorized disclosure." *Id.* (emphasis added). But nowhere did she allege that ***her*** nonpublic personal information was accessed by unauthorized user—and standing requires plaintiffs to "'allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Like the plaintiff in *Katz II*, Plaintiff here seeks to stand on others' shoulders. He alleges one fatality and one injury in Texas (Compl. ¶ 4), 141 house fires nationwide "involving lightning and CSST" (*id.* ¶ 39), one house fire in Pennsylvania, (*id.* ¶ 57), and another in Tennessee (*id.* ¶ 58). But whether the individuals in these reported fires suffered harm as a result of defective CSST begs the question of whether ***Plaintiff*** suffered harm and has standing to bring the claims he asserts. He does not.[9]

Because Plaintiff has failed to plausibly allege that he has suffered an injury-in-fact, he lacks standing to bring the claims he asserts, and the Court should dismiss his Complaint.

---

[9] While injury to others may be relevant to whether a credible threat of harm exists, Plaintiff has failed to adequately plead such a threat. *See* Section IV.A.1, *supra*.

B.      **Plaintiff's Complaint Should Also Be Dismissed Under Rule 12(b)(6) For Failure To State A Claim**

1.      **The Economic Loss Rule Bars Plaintiff's Claims**

Because Plaintiff seeks only economic losses, each of his claims is barred by the economic loss rule and should therefore be dismissed.

The economic loss rule bars tort claims seeking damages for only economic losses, without any claim of personal injury or damage to other property (*i.e.*, damage to property other than the product itself). *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986); *Sebago, Inc. v. Beazer East, Inc.,* 18 F. Supp. 2d 70, 89 (D. Mass. 1998) (Wolf, J.). In essence, economic loss is the difference between what is received and what is represented. *E. River*, 476 U.S. at 872 ("Such damage means simply that the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.'") (quoting J. White & R. Summers, *Uniform Commercial Code* § 11-4, at 406 (2d ed. 1980)). To seek damages of that kind, one must turn to contract, not tort, law.

"[P]urely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993). Economic loss includes "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property.'" *Marcil v. John Deere Indus. Equip. Co.*, 9 Mass. App. Ct. 625, 630 n.3 (1980) (quotation marks and citation omitted). Applying this doctrine, federal courts have repeatedly dismissed tort claims absent allegations of personal injury or harm to other property. *See, e.g.*, *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 292-93 (D. Mass. 2009) (Woodlock, J.) (dismissing the plaintiff's products liability and failure to warn claim where she failed to allege any physical injury or harm to other property); *Lewis v. Gen.*

*Elec. Co.*, 37 F. Supp. 2d 55, 59 (D. Mass. 1999) (Ponsor, J.) (dismissing negligence and strict liability claims where landowner alleged other properties in her neighborhood were contaminated with PCBs, causing a diminution in the value of her home, but did not allege her property was contaminated).

In *Sebago*, for example, plaintiffs, the owners of various buildings, alleged a thermal insulation product used in their roofing systems degraded, and, over time, caused damage to their roofing systems and a risk of personal injury. 18 F. Supp. 2d at 77. They sought to recover damages for physical damage to their buildings, diminution in value, and lost rent. *Id.* at 94. The court dismissed their negligence and strict liability claims because the "damages are all damages to the 'relevant product,' not damage to 'other property.'" *Id.* at 94-95 (quoting *Marcil*, 9 Mass. App. Ct. at 630 n.3).

The same is true here. Plaintiff's claims, all of which sound in tort, fall squarely within the economic loss rule. Nowhere in the Complaint does Plaintiff allege personal injury or damage to his property. Rather, Plaintiff merely seeks to recover the cost of removing and replacing the allegedly defective CSST from his home. *See* Compl. ¶ 9 ("Gastite® is defective, should never have been sold, and needs to be removed and replaced from all structures"). He alleges he and the putative class "are forced to repair and/or replace Gastite®," but have not been reimbursed "or advanced the costs associated with this undertaking." Compl. ¶ 62; *see also id.* at ¶65(j)-(l) (listing purportedly common questions of damages). But the cost of removing and replacing an allegedly defective product is a purely economic loss that tort law does not compensate. *E. River*, 476 U.S. at 871; *see also Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.), Inc.*, 263 F. Supp. 2d 140, 145 (D. Mass. 2003) ("Repair and Replacement costs are typical measures of economic loss.") (quotation marks and citation omitted).

Because Plaintiff does not allege the CSST in his home caused personal injury or harm to other property, the Court should dismiss his Complaint in its entirety.

### 2. Plaintiff Fails To Sufficiently Plead Injury

Plaintiff's Complaint should also be dismissed because he fails to adequately plead that he has been injured.

Each of Plaintiff's claims requires that he plead he suffered an injury as a result of an allegedly defective product. *Torres v. Skil Corp.,* No. 11-11232-MBB, 2013 WL 3105815, at *5 (D. Mass. June 17, 2013) (Bowler, J.). This Court has dismissed product liability tort claims for failure to plead injury and damage. *See e.g. Watkins v. Omni Life Science, Inc.*, 692 F. Supp. 2d 170, 175-77 (D. Mass. 2010) (dismissing product liability claims for failure to plead a cognizable injury when plaintiffs did not allege their replacement hip failed: "apprehension of a heightened risk … from an allegedly defective product that has not failed or caused harm is insufficient as a matter of law") (citing *Anderson v. W.R. Grace & Co.*, 628 F. Supp. 1219, 1231 n.6 (D. Mass. 1986)); *Rule*, 604 F. Supp. 2d at 293-96 (dismissing product liability claims for allegedly defective heartworm medication where plaintiff's dog did not suffer any harm).

As set forth above, Plaintiff fails to plausibly allege he suffered any injury—physical or otherwise—or any credible and imminent threat of future injury caused by the allegedly defective CSST in his home. For this additional reason, his claims fail as a matter of law under Rule 12(b)(6).

### 3. Plaintiff Fails To State A Claim For Strict Liability Because Massachusetts Does Not Recognize The Tort Of Strict Liability Apart From Breach Of Warranty

Counts I and IV assert claims for strict liability in tort. In Count I, Plaintiff alleges strict liability under a design and manufacturing defect theory; and in Count IV, he alleges strict

liability under a failure to warn theory. Massachusetts does not recognize either claim, and, accordingly, both claims should be dismissed.

This court and the First Circuit both recognize that "[t]here is no 'strict liability in tort' action recognized by Massachusetts law apart from liability for breach of warranty under the Uniform Commercial Code." *Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc.*, 573 F. Supp. 2d 372, 380-81 (D. Mass. 2008) (Stearns, J.) (citing *Swartz v. Gen. Motors Corp.*, 375 Mass. 628, 631 (1978); *Smith v. Robertshaw Controls Co.*, 410 F.3d 29, 35 & n.4 (1st Cir. 2005) ("Massachusetts does not recognize strict products liability in tort."). *See also Mason v. Gen. Motors Corp.*, 397 Mass. 183, 191 (1986) (Legislature created statutory remedy for breach of warranty and "[w]e are unwilling … to hold today that, apart from liability for breach of warranty under our statute, there may be liability without fault for defective products."). Plaintiff's strict liability claims "fail[] as a matter of law." *See Pub. Serv. Mut. Ins.*, 573 F. Supp. 2d at 380-81.

### C. The Court Should Strike Plaintiff's Class Allegations Because He Is Not A Member Of The Class He Seeks To Represent

A court may strike class allegations where there is no reasonable prospect that discovery or additional time would assist a named plaintiff in demonstrating the viability of the proposed class. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). Here, it is obvious from the Complaint that Plaintiff, a ***Florida*** resident suing Titeflex because his ***Florida*** home has CSST, cannot adequately represent a Massachusetts class because he is not a member of it.

"Rule 23(c)(1)(A) says that the district court should decide whether to certify a class '[a]t an early practicable time' in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs. As a result, '[e]ither plaintiff or defendant may move for a

determination of whether the action may be certified under Rule 23(c)(1).'" *Pilgrim*, 660 F.3d at 949 (quoting 7AA Charles Allen Wright et al., *Federal Practice and Procedure* § 1785); *see also Hill v. Wells Fargo Bank, N.A.*, ___F. Supp. 2d ___, 2013 WL 2297056, at *11 (N.D. Ill. May 24, 2013) ("a ruling on class certification is appropriate at the pleading stage where … the pleadings make clear that the suit cannot satisfy Rule 23") (citing Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3:4 (2012) ("courts have held that motions to strike should not be the norm, but are appropriate when the unsuitability of class treatment is evident on the face of the complaint")).

Plaintiff must satisfy the requirements of Rule 23(a), which includes adequacy of representation, in order to justify class treatment. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir.2008). "Rule 23(a)(4) requires that 'the representative parties will fairly and adequately protect the interests of the class.'" *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 100 (D. Mass. 2010) (quoting Fed. R. Civ. P. 23(a)(4)) (Wolf, J.). And "'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Abla v. Brinker Rest. Corp.*, 279 F.R.D. 51, 55 (D. Mass. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2549 (2011)) (internal quotation marks and citations omitted) (Tauro, J.).

Plaintiff cannot represent a class of which he is not a member. In *Bohn v. Boiron*, for example, the court struck a plaintiff's class allegations where she did not allege facts showing she was a member of the class she sought to represent. No. 11 C 08704, 2013 WL 3975126, at *6 (N. D. Ill. Aug. 1, 2013). There, plaintiff alleged she purchased a product prior to December 7, 2011, but sought to represent a class of purchasers who bought the product after July 27, 2012. *Id.* She was not a member of the class and "therefore, she is not an adequate representative." *Id.*

17

Plaintiff's class allegations in this case should be stricken for the same reason. Plaintiff seeks to represent a class defined as

> . . . all persons or entities ***in the Commonwealth of Massachusetts*** who purchased a house, or other structure, on which Titeflex's Gastite® is installed after September 5, 2006, or who, after September 5, 2006, purchased a house or other structure, in which Titeflex's Gastite® was installed prior to September 5, 2006.

Compl. ¶ 63 (emphasis added). Yet Plaintiff admits he is a citizen of Florida (Compl. ¶ 14) and that he owns a house in Florida "in which Gastite® CSST is used to service a gas fireplace." *Id.* ¶ 8. Nowhere in the Complaint does Plaintiff allege that he owns property in Massachusetts, much less a Massachusetts property with CSST. Like the plaintiff in *Bohn*, Plaintiff is not a member of the class he seeks to represent, and there is no reasonable prospect that Plaintiff will be able to demonstrate that he can adequately represent the putative class. The Court should strike his class allegations.

## V. **CONCLUSION**

Titeflex respectfully requests that the Court grant its motion and dismiss Plaintiff's Complaint under Rule 12(b)(1) because Plaintiff lacks standing to sue and under Rule 12(b)(6) because (1) he cannot recover economic loss in tort, (2) he has failed to plead injury, and (3) Massachusetts law does not recognize his strict liability tort claims. To the extent any of Plaintiff's claims survive this motion, Titeflex respectfully requests that the Court strike his class allegations because he is not a member of the class he seeks to represent.

Respectfully submitted,
TITEFLEX CORPORATION
By Its Attorneys,

/s/ Jodi K. Miller
Jeffrey E. Poindexter, BBO No. 631922
Jodi K. Miller, BBO No. 625089
BULKLEY, RICHARDSON AND GELINAS, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115
Phone: (413) 272-6249
Fax: (413) 272-6804
jpoindexter@bulkley.com
jmiller@bulkley.com

Charles B. Casper (admitted *pro hac vice*)
John G. Papianou (admitted *pro hac vice*)
MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP
123 S. Broad St.
Philadelphia, PA 19109
Phone: (215) 772-1500
Fax: (215) 772-7620
ccasper@mmwr.com
jpapianou@mmwr.com

Dated: September 20, 2013

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via U.S. first class mail to those indicated as non-registered participants on this 20th day of September 2013.

      /s/ Jodi K. Miller  
      Jodi K. Miller