UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

TIM KERIN, on behalf of himself )
and all others similarly situated, )
                                            )    CASE NO.: 3:13-cv-30141-MAP
             Plaintiff, )
v. )
TITEFLEX CORPORATION t/a GASTITE, )
             Defendant. )

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT TITEFLEX'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, Tim Kerin, by and through undersigned counsel, files this Memorandum in Opposition to Defendant Titeflex Corporation's ("Titeflex") Motion to Dismiss and to Strike Plaintiff's Class Allegations, and in support of his opposition states the following:

**I.    INTRODUCTION**

This action is brought by Mr. Kerin on behalf of himself and "all persons or entities in the Commonwealth of Massachusetts who purchased a house, or other structure, on which Titeflex's Gastite® is installed after September 5, 2006, or who, after September 5, 2006, purchased a house, or other structure, in which Titeflex's Gastite® was installed prior to September 5, 2006." Complaint ¶ 63. The Complaint alleges six causes of action: Strict Liability – Design and Manufacturing Defect, ¶¶ 69-80; Negligence – Design Defect: Failure to Test, ¶¶ 81-88; Negligence – Failure to Warn, ¶¶ 89-98; and Strict Liability – Failure to Warn, ¶¶ 99-102.

Defendant has moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. (12)(b)(6). Defendant argues that Mr. Kerin, who purchased a product with a hidden and dangerous defect, and whose home and life are at risk because this product made his house vulnerable to a lightning strike, cannot sue because he has not yet lost his home or health in a fire. Defendant's position is that Mr. Kerin must endure a house fire before he can sue for the expense of protecting his home from the risk of a fire.

Defendant also asserts that Mr. Kerin is not a member of the class that he seeks to represent. Defendant fails to support this claim with legal analysis, and it misleadingly claims that the class is "defined as ' . . . all persons or entities in the ***Commonwealth of Massachusetts*** who purchased a house, or other structure . . . .'" Memorandum of Law in Support of Titeflex Corporation's Motion to Dismiss and to Strike Plaintiff's Class Allegations (hereinafter "Memorandum"), 18. In fact, the class is defined as "Plaintiff and all persons or entities in the Commonwealth of Massachusetts who purchased a house, or other structure . . . ." Complaint ¶ 63. If Defendant intends to argue that Mr. Kerin is not an adequate class representative, it has not yet advanced an argument explaining this position.

As discussed below, Mr. Kerin does have standing and has adequately alleged sufficient facts to support the existence of the causes of action brought against Defendant. Accordingly, Defendant's arguments are without merit, and its Motion should be denied.

## II.   SUMMARY OF FACTS

Titeflex's Gastite® is a dangerous product that endangers lives and threatens property damage. Gastite® is corrugated stainless steel tubing ("CSST") that transports natural gas within homes and commercial structures. Titeflex acted improperly in its design, manufacture, and testing of this product. Gastite's® thin walls are susceptible to perforation by an electrical arc

during a lightning strike. This defect has resulted in property damage and death, and it threatens the same to homes wherever it has been installed. While Mr. Kerin and the putative class have not yet suffered this catastrophic damage, Massachusetts courts recognize a cause of action when a dangerously defective product remains in use and threatens future harm.

## III. BACKGROUND

CSST was introduced to the United States in 1983. Complaint at ¶ 17. CSST is primarily used for gas distribution in residential housing, and is used in over half of all residential construction. *Id.* at ¶¶ 22, 27. When the National Fire Protection Association first considered CSST in 1988, it did not consider lightning. *Id.* at ¶ 19-20. This oversight would prove fatal.

CSST is likely to fail when exposed to lightning and other electrical insults. *Id.* at ¶ 29. In a lightning strike, an arc of energy that "jumps" from a pathway of higher potential to a pathway of lower potential can puncture the tubing wall in a CSST system. *Id.* at ¶ 31. This puncture can ignite natural gas, which then ignites surround materials. *Id.* CSST's vulnerability to lightning strikes leads to house fires; as of August 2011, 141 fires involving lightning and CSST had been reported in the United States. *Id.* at ¶¶ 31; 39. This extreme danger has prompted the Frisco, Texas and Arlington, Texas fire departments to seek a ban of CSST. *Id.* at ¶ 38.

Titeflex has known of the risk of damage in a lightning strike since at least 2004. *Id.* at ¶ 45. A study that SEFTIM (Société d'Etudes et de Fabrication des Techniques Industrielle Modernes) conducted in April 2011 described the risk of lightning related damage and recommended testing to evaluate the efficacy of possible mitigations. *Id.* at ¶¶ 49-51. Titeflex failed to perform the recommended testing; adequate testing would have revealed dangerous deficiencies in Gastite®. *Id.* at ¶ 54. Despite this significant danger, Titeflex continues to market

Gastite and fails to disclose the danger it poses. Titeflex describes Gastite® as a "reliable, cost-effective system that can be installed in all modes of construction." *Id.* at 42.

Several CSST manufacturers have been involved in litigation regarding the risks that this product creates. One such case settled in 2006; another resulted in a jury verdict against Omega Flex, the largest CSST manufacturer. *Id.* at ¶¶ 56-57.

## IV. STANDARD OF REVIEW

### A. Standard of Review Under Rule 12(b)(1)

Questions of Article III standing are brought under Rule 12(b)(1). *See Katz v. Pershing, LLC*, 672 F.3d 64, 70 (1st Cir. 2012). "The Supreme Court has decreed that federal courts normally must decide whether a particular plaintiff has constitutional standing before considering that plaintiff's statutory standing." *Id.* at 75 (citations omitted). When a court considers a motion to dismiss for lack of standing under Rule 12(b)(1), it "accept[s] as true all well-pleaded factual averments in the plaintiff's . . . complaint and indulge[s] all reasonable inferences therefrom in his favor." *Id.* at 70 (quoting *Deniz v. Mun'y of Guaynabo*, 285 F.3d 142, 144 (1st Cir. 2002) (internal quotation marks omitted).

### B. Standard of Review Under Rule 12(b)(6)

A court considering a motion to dismiss under Rule 12(b)(6) "assume[s] the truth of all well-pleaded facts in the complaint, drawing all reasonable inferences in the plaintiffs' favor. To survive a motion to dismiss, the complaint must allege a plausible entitlement to relief." *Fitzgerald v. Harris*, 549 F.3d 46, 52 (1st Cir. 2008) (internal citations and quotation marks omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## V. ARGUMENT

Mr. Kerin has suffered an injury because a product that he purchased, and that is installed in his home, has hidden, dangerous defects. Defendant's product has significantly increased his chance of suffering property damage, personal injury, or even death. Mr. Kerin's damages may be measured as the difference between the value he paid and the actual worth of this product, or alternatively, the cost of taking safety precautions to eliminate the heightened risk to which Defendant has exposed him. These are not "conjectural or hypothetical" injuries, but rather the actual consequential damages that results from Defendant's defective product. Memorandum at 1-2. As discussed in detail below, this injury suffices to provide Mr. Kerin with standing to sue Defendant.

Mr. Kerin's claims are otherwise proper. His suit is not barred by the Massachusetts economic loss rule, which Massachusetts courts have found inapplicable when plaintiffs allege dangerous defects to products still in use. Mr. Kerin has pled an injury, measured by the difference in value between the value he paid and the value he received, or alternatively, the necessary cost of neutralizing the safety risk that the product poses. Massachusetts warranty law is synonymous with strict liability law, so strict liability law applies here. To the extent that this Court agrees with Defendant that Mr. Kerin must explicitly state that he is bringing claims under an implied warranty of merchantability, he respectfully requests leave to amend his complaint.

Finally, Mr. Kerin is a member of the class he seeks to represent. Any arguments about whether he meets the adequacy requirement as a class representative should be made at the class certification stage.

### A. Mr. Kerin Has Standing to Bring the Claims He Asserts.

Article III standing requirements are "satisfied only when the plaintiff has such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Culhane v. Aurora Loan Servs. Of Neb.*, 708 F.3d 282, 289 (1st Cir. 2013) (internal quotation marks and citation omitted). Determinations about constitutional standing therefore necessarily depend upon underlying statutory and common law. *See Alabama Power Co. v. Ickes*, 302 U.S. 464, 479 (1938) ("Where . . . there has been a violation of a right, the person injured is entitled to an action.") (internal quotation marks and citation omitted); *Katz v. Pershing, LLC*, 672 F.3d 64, 72; 75 (1st Cir. 2012) ("The invasion of a common-law right . . . can constitute an injury sufficient to create standing"; "Legislatures may affect both [constitutional and statutory] types of standing when they enact new statutes."); *Baena v. KPMG LLP*, 389 F. Supp. 2d 112, 117 (D. Mass. 2005) (Explaining, in response to an assertion that Plaintiffs lacked Article III standing: "As this is a diversity case, the question is whether the alleged theory of injury . . . is cognizable under state law, in this case Massachusetts."); *Beck v. Fed. Nat'l Mortg. Ass'n*, 2013 U.S. Dist. LEXIS 106576, *10 (D. Me. 2013) ("The four claims challenged in CMI's motion are all state law claims. Consequently, Maine law governs the issue of standing."); *Fiedler v. Ocean Props., Ltd.*, 683 F. Supp. 2d 57, 70 (D. Me. 2010) ("the Supreme Court found that Congress had created new legal rights when it enacted the Civil Rights Act, implicitly concluding that Congress could expand understandings of injury (and hence standing) via statute.").

As discussed throughout this Memorandum, Massachusetts common law recognizes a cause of action when a plaintiff has purchased a dangerously defective product whose useful life has not yet ended, and so which poses a continuing risk. *See Iannacchino v. Ford Motor Co.*, 451

Mass. 623 (2008); *Wyman v. Ayer Properties, LLC.*, 83 Mass. App. Ct. 21 (2012); *Holtzman v. Gen. Motors Corp.*, 15 Mass. L. Rep. 15, 2002 Mass. Super. LEXIS 249; *Ashley v. Boch Toyota, Inc.*, 1992 Mass. App. Div. 35 (1992). Because this is a diversity suit brought under Massachusetts law, and Mr. Kerin has suffered harm that Massachusetts law recognizes as a legal injury, he has standing under Article III. *See* Complaint ¶ 14.

### 1.     Mr. Kerin Has Alleged Sufficient Harm.

Mr. Kerin's case is analogous to cases in which suits were allowed because dangerous products were still in use, and policy considerations further weigh in favor of finding that he has standing. Massachusetts courts have specifically allowed these types of actions. Defendant's argument that Mr. Kerin has suffered insufficient harm relies on cases that are inapposite to the instant case for two reasons: the plaintiffs in those cases did not offer any evidence that the product at issue was actually dangerous, and those cases involve products whose useful lives had ended.

This case is readily distinguishable from cases that Defendant cites because the product's anticipated useful life has not ended. Courts have found that, "where a product has fulfilled its useful life without any manifestation of defect, a plaintiff has received the benefit of his or her bargain and has not suffered any 'injury.'" *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 295 (D. Mass. 2009). In contrast, Massachusetts plaintiffs have been allowed to sue "irrespective of whether the defect has manifested itself" when the product had not yet "fulfilled its anticipated useful life." *Id.* (discussing *Holtzman v. Gen. Motors Corp.*, No. 15 Mass. L. Rep. 15, 2002 Mass. Super. LEXIS 249). The *Rule* court favorably cited cases from other states in which courts held that plaintiffs "alleging a breach of implied warranty . . . need not show any manifestation of harm because [the products at issue have] an 'indefinite' useful life." *Id.*

(quoting *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 609 (Tex. App. 1995) and citing *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 923 (2001)); *see also Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 624-25 ("The plaintiffs do not allege that their door handles have ever malfunctioned or that they have sustained any personal injury or property damage," but the Court did "not consider the lack of accident-related injury or manifested defect a bar to recovery under G. L. c. 93A, section 9, in this case."). Lack of property damage or personal harm does not stand as a bar to recovery when the defective product's useful life is not over.

      This case is further distinguishable from cases that Defendant cites because the plaintiffs in those cases failed to present evidence supporting their allegations of risk. *See In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (Plaintiffs alleged that fruit juice contained lead but did not offer evidence that, for example, the product actually "caused any reported injuries."); *Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. Appx. 257, 259 (3rd Cir. 2010) (Plaintiff's allegation of unsafe lead levels in lipstick was directly contradicted by "the FDA's report finding that the lead levels in the Defendants' lipsticks were not dangerous" and Plaintiff's claims were merely "a subjective allegation that the trace amounts of lead in the lipsticks are unacceptable to her"); *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 958-59 (N.D.Ill. 2008) (Plaintiff put forth no evidence of the extent of her exposure to the allegedly dangerous product and the available evidence indicated that her lead exposure was within acceptable levels).

      Unlike the plaintiffs of the cases that Defendant cites, Mr. Kerin has put forth extensive documentation of an actual safety risk. Mr. Kerin cites a report by a specialist in electrical and mechanical failure analysis, who stated: "CSST fails when the CSST is contacted by electrical current associated with lightning. . . . During this process, there is ignition of the escaping gas."

Complaint at ¶ 6. Mr. Kerin's complaint contains reports that this risk of fire has materialized for at least 141 homeowners. *Id.* at ¶ 39. Mr. Kerin explains that CSST has even led to personal injury and death. *Id.* at ¶ 4. Even Titeflex acknowledged the risk by developing FlashShield in 2012, which has modifications intended to avoid damage during a lightning strike. *Id.* at ¶ 7.

Mr. Kerin has standing to sue for the diminution in value or the expense of eliminating the ongoing risk that Defendant created. *See Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 630-631 (2008); *Microsoft Corp.*, 914 S.W. 2d at 610 ("we do not believe that a purchaser who buys software that cannot perform as promised must nevertheless use the software and lose data before he can claim economic damage."). If Mr. Kerin is not found to have standing at this stage, he must either bear the cost of safety improvements himself or wait to suffer property damage or personal injury before holding Defendant liable for its wrongdoing. Neither of these options is equitable or efficient, especially because Defendants might escape liability altogether if it successfully plead defenses such as assumption of the risk or failure to mitigate in the event of a fire.

Finding that Mr. Kerin has standing would be in furtherance of tort law's objective of "reduc[ing] the sum of the costs of accidents and the costs of avoiding accidents." Avihay Dorfman, *What is the Point of the Tort Remedy?*, 55 Am. J. Juris 105, 113 (2010) (quoting GUIDO CALABRESI, THE COSTS OF ACCIDENTS 26 (1970)). Among the various objectives of tort law, "[t]he economic grounds supporting the primacy of accident reduction are obvious: to preserve valuable resources in human capital. The moral grounds, however, are stronger. There is no coherent moral system in the world that justifies increasing the accident rate." George L. Priest, *Satisfying the Multiple Goals of Tort Law*, 22 Val. U.L. Rev. 1 (1988). Mr. Kerin requests

that the Court find that he has standing while it is still possible for the legal system to intervene preventatively against property damage, injury, and death.

### 2. Mr. Kerin's Allegations Are Not Too Speculative to Confer Standing.

Defendant misconstrues Mr. Kerin's complaint, which is not based on speculation. Mr. Kerin does not sue for damages that would be calculated based on future harm resulting from a house fire. Rather, Mr. Kerin sues based on breaches of warranty, negligence, and failures to warn that have already occurred. Mr. Kerin alleges that the product sold is dangerously defective, that the product is therefore worth less than the price he paid for it, and that he must expend money to protect his home from the risk this product has created. *See Rule*, 604 F. Supp. 2d at 295 (discussing cases in which actions for breach of warranty, without accompanying personal injury or property damage, have been allowed); *see also Hagan v. Riley*, 79 Mass. 515, 516 (1859) ("For every breach of a promise made on good consideration, the law awards some damage."); *Stigman v. Nickerson Enterprises*, 2000 Mass. App. Div. 223, 225 n. 5 (Mass. App. Ct. 2000) ("The evidence of serious defects in the Corvette apparent from the date of sale and the defendant's refusal or repair or acknowledge the same would have warranted a finding for the plaintiff for breach of the implied warranty of merchantability . . . and unfair and deceptive acts in violation of G.L.c. 93A") (internal citations omitted); *Ashley v. Boch Toyota, Inc.*, 1992 Mass. App. Div. 35, 36 (1992) ("The trial judge was entitled to credit the evidence that the defect was of such a nature that the car was inherently unsafe to drive, even though no problems in handling were evident. The plaintiff, having met her burden of proving the warranty and its breach, is entitled to at least nominal damages.").

### 3. Mr. Kerin Has Standing Based on His Own Injuries.

Just as Mr. Kerin does not rely on speculation about future events in his allegations, he also does not rely on others' injuries to confer standing on himself. He alleges that he was injured when he purchased a product that was, unbeknownst to him, dangerously defective. This is a cause of action that Massachusetts recognizes. *See Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 295 (D. Mass. 2009) (discussing cases). Kerin's complaint references others' injuries to support his allegations that the product was unreasonably dangerous. *See In re Fruit Juice*, 831 F. Supp. 2d at 512 (suggesting that plaintiffs' allegations about a defective product would be stronger if plaintiffs "alleged that the level of lead in Defendants' products violated any FDA standards or caused any injuries to any individuals who consumed the products."). This suit relies on Mr. Kerin's own injury resulting from the purchase of a product with a hidden, dangerous defect. Evidence of others' property damage or personal injury merely supports the allegation that this product is, in fact, dangerously defective.

### B. Dismissal Under 12(b)(6) Would Be Improper.

Defendant's argument that Mr. Kerin has failed to state a claim is baseless. As discussed above, Massachusetts recognizes a cause of action when a dangerously defective product's useful life has not ended. This is an exception to the economic loss rule, as explained below. Mr. Kerin has suffered a legally cognizable injury because he alleges an injury that Massachusetts courts have recognized repeatedly. Finally, Mr. Kerin's strict liability claim is appropriate because Massachusetts's breach of warranty of merchantability law is synonymous with strict liability law.

1. **The Economic Loss Rule Does Not Bar Mr. Kerin's Claims.**

Although Massachusetts courts recognize the economic loss rule, its contours are unsettled, and this case likely falls within an evolving exception to the rule, as discussed below. A contemporary Massachusetts court would likely allow this case to go forward, but to the extent that this is unclear, "[a] motion to dismiss is not an appropriate vehicle for 'resolving undecided points of substantive law.'" *City of Boston v. Smith & Weston Corp.*, 12 Mass. L. Rep. 225, 2000 Mass. Super. LEXIS 352, *27 (Mass. Sup. Ct. 2000) (quoting *M. Aschheim Co. v. Turkanis*, 17 Mass. App Ct. 968, 968 (1983)). The economic loss rule is therefore not a viable basis for Defendant's motion to dismiss.

Massachusetts has long recognized the economic loss rule, which prevents tort and strict liability recovery when there is no personal injury or property damage. *Wyman v. Ayer Properties*, LLC, 83 Mass. App. Ct. 21, 25 (2012) (appeal granted *Wyman v. Ayer Properties, LLC*, 465 Mass. 1105 (2013)). This rule, however, is far from absolute. For instance, there is a well-established exception for negligent misrepresentation claims. *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 472, n. 9 (2009). Courts will also decline to enforce this rule when it would be imprudent in a particular case. *See City of Boston v. Smith & Weston Corp.*, 12 Mass. L. Rep. 225, 2000 Mass. Super. LEXIS 352, *39-40 (Mass. Super. Ct. 2000) (holding that "the economic loss rule does not compel dismissal of this case for several reasons," including "the uniqueness of the allegations . . . ."). Finally, as discussed below, Massachusetts courts recognize an exception in cases involving products with latent, dangerous defects.

Massachusetts courts have allowed suits for breach of warranty and related claims when dangerously defective products have not yet resulted in personal injury or other property damage. The Supreme Judicial Court has held that plaintiffs who continue to "own vehicles that they

allege are noncompliant with applicable safety regulations" may seek redress for "an overpayment . . . measurable by the cost to bring the vehicles into compliance." *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 630-631(2008) (dismissing the case without prejudice because plaintiffs' pleadings were insufficient). Another Massachusetts court allowed claims that tire jacks were "subject to failure during normal use, and as such are unreasonably dangerous," even though "[n]one of the plaintiffs allege that his or her jack has failed, or even that s/he has used it." *Holtzman*, 2002 Mass. Super. LEXIS 249 at *1. The court explained that "Massachusetts cases allowing recovery of purely economic damages for breach of warranty are legion" and stated, "[i]t would be anomalous to open the courthouse doors to buyers of shoes with separating soles, motorcycles that won't start, engines that won't run, catalogs whose pages stick together, and moldy wine – none of whom has suffered, or is likely to suffer, physical injury from the goods in question – but not to owners of a product who allege a design defect capable of causing injury or death." *Id.* at *7, *9.

    The contours of this exception may be expanding. The *Iannacchino* Court stated in dicta that plaintiffs must establish a "legally required standard that the vehicles were at lease implicitly represented as meeting, but allegedly did not" in the absence of personal injury or property damage. 451 Mass. at 633. The most recent application of the exception, however, does not contain this requirement. The Massachusetts Court of Appeals allowed claims by trustees of a condominium that had been negligently constructed, despite an argument by defendants that the economic loss rule should bar the claim. *Wyman v. Ayer Properties, LLC*, 83 Mass. App. Ct. 21 (2012). The court explained that "the rule does not require a court to leave a wronged claimant with no remedy. Typically it denies the right and remedy of negligence damages and diverts liability and damages to available alternative theories of contract or warranty. . . .The

fundamental purpose of the rule is to confine the indeterminacy of damages, not to nullify a right and remedy for a demonstrated wrong and its harm." *Id.* at 28. The court declined to apply the economic loss rule where there was no "alternative remedy" and where there was "no danger of speculative, exorbitant damages . . . ." *Id.* at 29-30.

Defendant's motion to dismiss under the economic loss rule cannot be sustained because the most recent Massachusetts case supports Mr. Kerin's cause of action. To the extent that there is an unsettled question of state law, reflected in tension between the *Iannacchino* dicta and *Wyman* holding, this is not proper grounds for a motion to dismiss.

### 2. Mr. Kerin Has Sufficiently Pled Injury.

As discussed in sections V.A.1-3 and V.B.1 above, Mr. Kerin has sufficiently pled an injury. Claims based on a dangerously defective product are allowed when there is evidence of an actual risk and the product's useful life is not over. *See, e.g., Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 295 (D. Mass. 2009); *see also Baena v. KPMG LLP*, 389 F. Supp. 2d 112, 117 (D. Mass. 2005) ("As this is a diversity case, the question is whether the alleged theory of injury . . . is cognizable under state law, in this case Massachusetts."). The injury may be measured as the diminution in value resulting from the defect or the expense of eliminating the danger. *See Iannacchino*, 451 Mass. at 631 (stating that an overpayment would be "measurable by the cost to bring the vehicle into compliance); *Holtzman*, 2002 Mass. Super. LEXIS 249 at *6-7 (stating that damages could be measured as the cost of cover or the difference between the value as delivered and as warranted); *Ashley*, 1992 Mass. App. Div. at 36 (stating the damages could be measured as diminution in value or other means of calculation, such as resulting loss).

Rather than make necessary safety repairs at his own expense, or wait until he suffers property damage or personal injury, Mr. Kerin is entitled to sue for the difference between what he paid and what the product is worth, or in the alternative, for the expense of making necessary safety repairs.

### 3. Massachusetts's Warranty of Merchantability Law Functions as a Strict Liability Statute.

Mr. Kerin's claims under a theory of strict liability are proper because a "strict liability claim is synonymous with [Massachusetts] warranty law . . . ." *Torres v. Skil Corp.*, 2013 U.S. Dist. LEXIS 84653, *17 (D. Mass.). *See also Hatch v. Trail King Indus.*, 656 F.3d 59, 67 (1st Cir. 2011) ("The Supreme Judicial Court in *Johnson* (and other cases) has stated that as a matter of social policy the state legislature has decided that the implied warranty 'should establish liability as comprehensive as that to be found in other jurisdictions that have adopted the tort of strict product liability.'") (quoting *Commonwealth v. Johnson Insulation*, 682 N.E.2d 1323, 1326 (Mass. 1997)); *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 294 (D. Mass. 2009) ("Actions for breach of the implied warranty of merchantability under Massachusetts law 'are the functional equivalent of strict liability in other jurisdictions.'") (quoting *Cigna Ins. Co. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 15 (1st Cir. 2001)).

To the extent that the Court finds the strict liability claims insufficiently pled, Mr. Kerin respectfully requests permission to amend his complaint and replace any allegations of strict liability with allegations of breach of warranty of merchantability.

### C. Mr. Kerin is a Member of the Class He Seeks to Represent.

Defendant claims that Mr. Kerin "cannot adequately represent" the class "because he is not a member of it." Memorandum at 16. This argument relies on a misrepresentation of Mr. Kerin's class definition. Mr. Kerin defined the class as "*Plaintiff* and all persons or entities in the

Commonwealth of Massachusetts who purchased a house, or other structure, on which Titeflex's Gastite® is installed after September 4, 2006, or who, after September 5, 2006, purchased a house, or other structure, in which Titeflex's Gastite was installed prior to September 4, 2006." Complaint ¶ 63 (emphasis added). He is explicitly included in this class definition. Defendant's Memorandum, however, states that the class is "defined as ' . . . all persons or entities in the ***Commonwealth of Massachusetts*** . . . .'" Memorandum at 18. Defendant cannot excise sections of the class definition to support its argument that Mr. Kerin is not within the defined class.

Defendant bases its argument on a disingenuous misrepresentation of the class definition. If Defendant intends to argue that Mr. Kerin, although a member of the class, cannot adequately represent it, Defendant must advance this argument at the class certification stage. *See Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 58-60 (1st Cir. 2013). Such an argument would fail, however, because Mr. Kerin is an adequate representative. Out of state plaintiffs can commence suit in Massachusetts, and Titeflex is a Massachusetts corporation, so Mr. Kerin can bring this suit. *See* M.G.L. c. 23A, § 2. Mr. Kerin's "interests will not conflict with those of the class members and [his] counsel is qualified, experienced, and able to vigorously conduct the proposed litigation." *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 26 (D. Mass. 2003). Mr. Kerin has suffered the same injury as other class members, so he has no conflicts of interest in this litigation. *See* Complaint ¶¶ 69-102. If any conflict of law arises, the complication will be minimal and manageable, especially as there are only two relevant jurisdictions. *See Payne*, 216 F.R.D. at 28.

Defendant fails to explain why Mr. Kerin cannot adequately represent the class. Defendant supports its argument by relegating Mr. Kerin to an ellipsis and no further factual analysis. Defendant's motion should therefore be denied.

## VI. CONCLUSION

Mr. Kerin respectfully requests that the Court deny the Defendant's motion to dismiss because he has properly pled an injury for which there is legal redress. Mr. Kerin further requests that the Court deny the motion to strike class allegations because he is a member of the class he seeks to represent and because it is premature to decide such issues. To the extent that the Court finds any of Defendant's arguments persuasive, Mr. Kerin seek the Court's leave to amend his complaint.

    Respectfully submitted,
    Tim Kerin

    By his attorneys,

    /s/ Kevin T. Peters
    Kevin T. Peters (BBO #550522)
    ARROWOOD PETERS LLP
    10 Post Office Square
    Suite 1180 North
    Boston, MA 02019
    Tel: (617) 849-6211
    Fax: (617) 849-6201

November 1, 2013

### CERTIFICATE OF SERVICE

I, Kevin T. Peters, hereby certify that on November 1, 2013 the above document was served electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies were sent to those indicated as non-registered participants on that date.

    /s/ Kevin T. Peters